# UNITED STATES DISTRICT COURT
### for the

Eastern District of Wisconsin

CLERK'S OFFICE
A TRUE COPY
Jul 11, 2022
s/ Michael Longley

Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Tracking of<br>*(Identify the person, property, or object to be tracked )*<br><br>Tan 2022 Dodge Ram 1500 TRX pick-up truck<br>bearing Wisconsin license plate no. TH9661,<br>VIN 1C6SRFU96NN370736 | )<br>)<br>)<br>)<br>)<br>) |

Case No.    **22-M-474 (SCD)**

## TRACKING WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government shows there is reason to believe that the person, property, or object described above has been involved in and likely will continue to be involved in the criminal activity identified in the application, and ✔ is located in this district;       is not now located in this district, but will be at execution;      the activity in this district relates to domestic or international terrorism;      other:                                                                                          .

I find that the affidavit(s), and any recorded testimony, establish probable cause to believe that
*(check the appropriate box)*          using the object      ✔    installing and using a tracking device
to monitor the location of the person, property, or object will satisfy the purpose set out in Fed. R. Crim. P. 41(c) for issuing a warrant.

✔ I find entry into the following vehicle or onto the following private property to be necessary without approval or knowledge of the owner, custodian, or user of the vehicle or property for installing, maintaining, and removing the tracking device: Tan 2022 Dodge Ram 1500 TRX pick-up truck
bearing Wisconsin license plate no. TH9661,
VIN 1C6SRFU96NN370736

**YOU ARE COMMANDED** to execute this warrant and begin using the object or installing the tracking device within ten days from the date of this order and may continue use for 45 days. The tracking may occur within this district or another district. To install, maintain, or remove the device, you may enter *(check boxes as appropriate)*

✔ into the vehicle described above         onto the private property described above

in the daytime only *(i.e., 6:00 a.m. to 10:00 p.m.)* ✔ at any time of day or night because good cause has been established.

Within 10 calendar days after the use of the tracking device has ended, the officer executing this warrant must both return it to United States Magistrate Judge *(name)*          Stephen C. Dries          and — unless delayed notice is authorized below — serve a copy of the warrant on the person who, or whose property or object, was tracked.

✔ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property or object, will be tracked *(check the appropriate box)*          for ____ days *(not to exceed 30)*
          ✔ until, the facts justifying, the later specific date of          10/06/2022          .

Date and time issued:   7-11-22 9:10 am

_____
*Judge's signature*

City and state:          Milwaukee, Wisconsin          

Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

Case No.

## **Return of Tracking Warrant With Installation**

1.  Date and time tracking device installed: _____

2.  Dates and times tracking device maintained: _____

3.  Date and time tracking device removed: _____

4.  The tracking device was used from *(date and time)*: _____

    to *(date and time)*: _____ .

### **Return of Tracking Warrant Without Installation**

1.  Date warrant executed: _____

2.  The tracking information was obtained from *(date and time)*: _____

    to *(date and time)*: _____ .

### **Certification**

I declare under the penalty of perjury that this return is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

*Subscribed, sworn to, and returned before me this date:*

_____

Date:_____

| Print | Save As... | Reset |

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin



CLERK'S OFFICE
A TRUE COPY
Jul 11, 2022
s/ Michael Longley
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Tracking of<br>*(Identify the person to be tracked or describe*<br>*the object or property to be used for tracking)*<br>Tan 2022 Dodge Ram 1500 TRX pick-up truck<br>bearing Wisconsin license plate no. TH9661,<br>VIN 1C6SRFU96NN370736 | )<br>)<br>)<br>)<br>)<br>)    Case No.   **22-M-474 (SCD)** |

## APPLICATION FOR A TRACKING WARRANT

I, a federal law enforcement officer or attorney for the government, have reason to believe that the person, property, or object described above has been and likely will continue to be involved in one or more violations of ___21___ U.S.C. § _841 and 846_ . Therefore, in furtherance of a criminal investigation, I request authority to install and use a tracking device or use the tracking capabilities of the property or object described above to determine location. The application is based on the facts set forth on the attached sheet.

☑ The person, property, or object is located in this district.

☐ The person, property, or object is not now located in this district, but will be at the time of execution.

☐ The activity in this district relates to domestic or international terrorism.

☐ Other:

The tracking will likely reveal these bases for the warrant under Fed. R. Crim. P. 41(c): *(check one or more)*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

☑ I further request, for purposes of installing, maintaining or removing the tracking device, authority to enter the following vehicle or private property, or both:
Tan 2022 Dodge Ram 1500 TRX pick-up truck, bearing Wisconsin license plate no. TH9661, VIN 1C6SRFU96NN370736

☑ Delayed notice of __90__ days (give exact ending date if more than 30 days: ___10/06/2022___ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Sean Carlson, Special Agent, ATF
*Applicant's printed name and title*

Sworn to before me ~~and signed in my presence~~. telephonically

Date: _7-11-22_

_____
*Judge's signature*

City and state: _Milwaukee, Wisconsin_

Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Sean Carlson, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under
Federal Rule of Criminal Procedure 41 to authorize law enforcement to install and monitor an
electronic tracking device to determine the locations of a vehicle more particularly described as a
Tan 2022 Dodge Ram 1500 TRX pick-up truck (bearing Wisconsin license plate no. TH9661,
VIN 1C6SRFU96NN370736) (hereinafter "**SUBJECT VEHICLE 2**").

2.      The Affiant is a Special Agent (SA) with the Bureau of Alcohol, Tobacco,
Firearms and Explosives (ATF). I have been so employed since November 2015 and I am
currently assigned to the Milwaukee Field Office.  Prior to my employment at ATF, I was a
Patrol Officer at the Hammond Police Department in Hammond, Indiana for over four (4) years.

3.      As a Special Agent, I have participated in the investigation of firearms and
narcotics-related offenses, resulting in the prosecution and conviction of numerous individuals
and the seizure of illegal drugs, and weapons. As a firearms investigator, I have interviewed
many individuals involved in firearm and drug trafficking and have obtained information from
them regarding acquisition, sale, importation, manufacture, and distribution of controlled
substances. Through my training and experience, I am familiar with the actions, habits, traits,
methods, and terminology utilized by the traffickers and abusers of controlled substances. I have
participated in all aspects of drug investigations, including physical surveillance, execution of
search warrants, undercover transactions, analysis of phone and financial records, and arrests of
numerous drug traffickers. Furthermore, I have attended training courses which specialized in the
investigation of narcotics trafficking and money laundering. Through these investigations, my

training and experience, and conversations with other law enforcement personnel, I have become familiar with the methods used by drug traffickers to manufacture, smuggle, safeguard, and distribute narcotics, and to collect and launder trafficking-derived proceeds. Through training and experience, I have performed countless hours of physical and digital surveillance and am aware that suspects will often take evasive action or employ methods to attempt to inhibit law enforcement's attempt to detect and monitor their illegal activities

4. Through training, experience, and discussions with other experienced agents:

5. I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin as well as in other areas of the United States.

6. I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, and crack cocaine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances.

7. I am familiar with the coded language utilized over the telephone to discuss drug trafficking and know that the language is often limited, guarded, and coded. I also know the various code names used to describe controlled substances.

8. I know drug dealers often put telephones in the names of others (nominees) or obtain pre-paid cellular telephones from companies where no subscriber name or address is required to distance themselves from telephones that they use to facilitate drug distribution. Because drug traffickers go through many telephone numbers, they often do not pay final bills when they are done using a telephone number and then are unable to put another line in the name of that subscriber; I also know that drug dealers tend to frequently change phone numbers in an attempt to avoid law enforcement detection.

9.      I know large-scale drug traffickers must maintain on-hand, large amounts of U.S. currency to maintain and finance their ongoing drug business.

10.      I know it is common for drug traffickers to maintain books, records, receipts, notes, ledgers, airline tickets, receipts relating to the purchase of financial instruments, and/or the transfer of funds and other papers relating to the transportation, ordering, sale, and distribution of controlled substances. That the aforementioned books, records, receipts, notes, ledgers, etc., are maintained where the traffickers have ready access to them.

11.      I know it is common for large-scale drug traffickers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residences, their businesses, and/or other locations over which they maintain dominion and control, for ready access and to conceal these items from law enforcement authorities or rival drug traffickers. These secure locations include, but are not limited to safes, briefcases, purses, locked filing cabinets, and hidden storage areas in natural voids of a residence.

12.      I know it is common for persons involved in large-scale drug trafficking to maintain evidence pertaining to their obtaining, secreting, transferring, concealing and/or expenditure of drug proceeds, such as currency, financial instruments, precious metals and gemstones, jewelry, books, records of real estate transactions, bank statements and records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashier's checks, bank checks, safe deposit box keys, and money wrappers. These items are maintained by the traffickers within residences (including attached and unattached garages), businesses or other locations over which they maintain dominion and control.

13.      I know large-scale drug traffickers often use electronic equipment such as telephones (land-lines and cell phones), computers and/or other electronic devices, currency

counting machines, and telephone answering machines/voicemail to generate, transfer, count, record and/or store the information described in the items above, as well as to conduct drug trafficking activities.

14.     I know that drug traffickers often use social media accounts to further their drug trafficking and money laundering activities.

15.     I know when drug traffickers amass large proceeds from the sale of drugs, the drug traffickers attempt to legitimize these profits through money laundering activities. To accomplish these goals, drug traffickers utilize the following methods, including, but not limited to: domestic and international banks and their attendant services, securities brokers, professionals such as attorneys and accountants, casinos, real estate, shell corporations and business fronts, and otherwise legitimate businesses that generate large quantities of currency.

16.     I know drug traffickers commonly maintain addresses or telephone numbers in books, papers or electronically that reflect names, addresses, and/or telephone numbers of their associates in the trafficking organization.

17.     I am personally involved in the investigation of the offenses discussed in this affidavit and I am familiar with all aspects of this investigation. The statements contained in this affidavit are based on my knowledge and, in part, information provided by law enforcement officers, including  (a) my personal knowledge and observations derived from participation in this investigation; (b) review of oral and written reports that I have received directly or indirectly from other law enforcement officers about this and other drug-trafficking investigations; (c) discussions I personally had concerning this investigation with other experienced drug-trafficking investigators; (d) physical surveillance by the DEA, ATF , and North Central HIDTA, the results of which have been reported to me directly or indirectly; (e) public records; (f) review

of telephone toll records, pen register and trap and trace information, and telephone subscriber information; (g) information provided by confidential sources working for local law enforcement officers, the DEA and North Central HIDTA; (h) review of driver's license and automobile registration records; (i) records obtained from law enforcement databases; (j) my training and experience as an ATF Special Agent; and (k) the training and experience of other law enforcement officers involved in this investigation; (l) United States Postal service records; and, (m) and the public portion of the Target Subjects' social media accounts.

18.    Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

19.    Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841 and 846, and Title 18, United States Code, Sections 1956 and 1957, have been committed, are being committed, and will be committed by Richard ROARK, and others, some of whom are not yet identified.  There is also probable cause to believe that the locations of **SUBJECT VEHICLE 2** will constitute evidence of those criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

## **PROBABLE CAUSE**

### A.    **Background**

20.    Since at least 2018, narcotics investigators in southeastern Wisconsin identified Samuel A. MOORE (M/W, XX/XX/1999) as a large-scale drug trafficker. Specifically, in 2018 a

confidential source (CS) provided information that MOORE was selling large amounts of marijuana in the Milwaukee, Wisconsin area.

21.     Case agents are aware that in January 2019, United States Postal Service Office of the Inspector General (USPS OIG) Special Agent (SA) Edward O'Dwyer and Milwaukee Police Department Detective (Det.) Eugene Nagler identified a group of individuals from California and Wisconsin, to include Samuel A. MOORE that have been sending high grade marijuana and marijuana derivatives through the U.S. mail. The controlled substances are sent from California to southeastern Wisconsin, including Milwaukee, and the Chicagoland area.

### 1.     Parcel Seizures

22.     On February 22, 2019, SA O'Dwyer conducted routine parcel screenings at the Milwaukee mail processing annex, located at 7620 South 10th St., Oak Creek, Wisconsin. Special Agent O'Dwyer observed a suspicious United States Postal Service (USPS) Priority Mail parcel displaying tracking number 9505 5125 0644 9051 1685 58.   The parcel in question bore a handwritten label addressed to "Brittany Corl, 3005 W. Maryland Ave., Milwaukee, WI 53211," and postmarked on February 20, 2019, in Los Angeles, California 90057.   A search of a law enforcement database revealed that the destination address contained a fictitious name.

23.     On February 22, 2019, SA O'Dwyer met with Milwaukee Police Det. Eugene Nagler and his narcotics canine "Flora" at the Milwaukee mail processing annex.   Together, Det. Nagler and "Flora" are a certified Police Narcotics Detection Team accredited through the Indiana Law Enforcement Training Academy in the detection of controlled substances and other controlled substances made with like components. Once at the annex, "Flora" indicated and alerted to the subject parcel.

24.     As a result, on February 25, 2019, SA O'Dwyer applied for and received a federal search warrant for the subject parcel, issued by U.S. Magistrate Judge Nancy Joseph, Magistrate Number 19-833M(NJ). On the same date, the subject parcel was searched pursuant to the above-referenced warrant.   Det. Nagler located two packages of suspected marijuana weighing approximately 1,025 grams (with packaging). The suspected marijuana was field tested by Det. Nagler and tested positive for THC, the active ingredient in marijuana.

25.     On February 25, 2019, upon opening the subject parcel pursuant to the search warrant, Det. Nagler discovered one (1) package of suspected marijuana weighing approximately 505 grams (w/packaging). The suspected marijuana was field tested by Det. Nagler which tested positive for the presence of THC.   Det. Nagler subsequently connected the package mailed by Samuel MOORE to Richard ROARK (M/W, DOB XX/XX/1996), the operator of SUBJECT VEHICLE 1, a Cadillac Escalade.   Det. Nagler reviewed United States Postal records and video surveillance in Los Angeles, California for the shipment of the package which depicted Samuel MOORE mailing the instant package, and the package described below, at the Los Angeles California Post Office. As stated, one of the packages identified as suspicious from this shipment sent by MOORE was addressed to 3005 N. Maryland Avenue, Milwaukee, Wisconsin. Previously case agents identified Brianna KNIGGE (W/F, DOB XX/XX/1999), who resided at 3005 N. Maryland Ave., Milwaukee, Wisconsin, as ROARK's girlfriend at the time. A review of open-source databases accessible to Det. Nagler further revealed that Richard ROARK previously resided at 12765 W. Hampton Ave., Butler, Wisconsin which is the shipping address for several other identified suspicious packages.

26.     Additionally, case agents know that on February 22, 2019, SA O'Dwyer located another suspicious package while conducting routine parcel screenings at the Milwaukee mail

processing annex, 7620 S. 10th St., Oak Creek, Wisconsin 53154. This suspicious USPS Priority Mail parcel displayed tracking number 9505 5125 0644 9051 1685 41 and bore a handwritten label addressed to "Tyler Alvin Mass, 12765 W. Hampton Ave., Butler, WI 53007." This parcel bore a February 20, 2019, postmark from Los Angeles, California 90057. A search of a law enforcement database determined that the destination address also contained a fictitious name.

27.     Again, on February 22, 2019, at the postal annex, "Flora" indicated and alerted to the subject parcel. On February 25, 2019, SA O'Dwyer applied for and received a federal search warrant for the subject parcel which was issued by U.S. Magistrate Judge Nancy Joseph, Magistrate Number 19-834M(NJ). On February 25, 2019, upon opening the subject parcel pursuant to the search warrant, Det. Nagler located one package of suspected marijuana weighing approximately 505 grams (with packaging). The suspected marijuana was field tested by Det. Nagler and tested positive for the presence of THC.

28.     Additionally, on May 30, 2019, United States Postal Inspector (USPI) Tyler Fink conducted routine parcel screenings at the Milwaukee Processing and Distribution Center (P & DC), located at 345 W. St. Paul Avenue, Milwaukee, Wisconsin 53203. This inspection revealed a suspicious parcel identified as United States Postal Service Priority Mail Express parcel EE503582065US. The shipping label for the subject parcel indicated it was sent from Coco & Eve, 801 S. Olive St., #804, Los Angeles, CA 90014." The parcel bore a handwritten label addressed to "Jocelyn Rogers, 12765 W. Hampton Ave., #201, Butler WI 53007," and a May 28, 2019, postmark from Los Angeles, California 90017.

29.     After searching a law enforcement database, Inspector Fink located a phone number for the origin address, 213-277-5060, and made contact with an employee of the Atelier Apartments who identified himself only as "Michael." "Michael" stated that he did not recognize

the name of the sender and gave consent to search the subject parcel. Upon opening the subject parcel, Inspector Fink discovered eight (8) vacuum sealed plastic bags containing suspected THC vape cartridges with a total gross weight of approximately 5,070 grams which field tested positive for the presence of THC. Believing this package to be connected to Det. Nagler's investigation into previously seized packages of marijuana, Inspector Fink turned these items over to Det. Nagler. Det. Nagler is aware that the address 12765 W. Hampton Ave., #201, Butler, Wisconsin 53007 was previously identified as a recipient address for controlled substances sent from California to Wisconsin.

30.     Through a review of United States Postal records and video surveillance collected in Los Angeles, California, case agents were able to identify and connect Samuel A. MOORE to the above-mentioned subject parcels sent through the mail.

### 1. Cash seizure from MOORE

31.     On Sunday July 28, 2019, Milwaukee County Sheriff Deputy Daniel Schlueter, assigned to the Milwaukee County Sheriff Office Airport Division at the Milwaukee Mitchell International Airport in the City of Milwaukee, was contacted by the Transportation Security Agency (TSA). A TSA official informed Deputy Schlueter that an individual carrying a large amount of U.S. currency made conflicting and suspicious statements at the screening station.

32.     Deputies Mazruczak and Schlueter responded to the security screening station and spoke with the lead screening agent who gave the following account. An individual identified as Samuel A. MOORE came through the screening station carrying a medium sized bag with a shoulder strap. During the screening process, the screening agents identified a large quantity of bulk cash. MOORE stated to the TSA agents, "Well it's my dad's stuff." MOORE indicated that he knew the cash totaled roughly $100,000 dollars; however, MOORE reiterated that the contents

of the bag belonged to his father. Investigators had previously identified MOORE's father as Daniel T. MOORE (W/M, DOB XX/XX/1969). Pursuant to TSA policy, TSA officials photographed MOORE's boarding pass, a Southwest flight to California, and identification. TSA officials then allowed him to proceed to the gate. Based upon this information, the deputies located MOORE. Upon arrival they spoke briefly to MOORE who attempted to walk away, stating he wasn't going to take that flight. MOORE was detained by the deputies and escorted to the Sheriff's Office substation at the airport.

33.     A pat down of MOORE revealed that MOORE possessed a wallet that contained two (2) additional identification cards. A review of the additional identifications revealed that they were forged and false. MOORE possessed an Arizona driver's license listing the name "Charles Harvey Peterson, XX/XX/1996, 2619 E. Pinchot Avenue, Phoenix, AZ 85016." The picture depicted on the driver's license did not match MOORE.

34.     MOORE also possessed a New Jersey driver's license listing the name "Samuel Preston MOORE, XX/XX/1997, 232 Nord Beach Road, Jersey City, NJ 08242," depicting a photograph matching MOORE. Because MOORE possessed two false identifications, and at the time he was only nineteen years old, MOORE received a Milwaukee County citation, for forged/ falsified identification card by underage person.

35.     As a result of this stop, on July 28, 2019, Homeland Security Investigations (HSI) Special Agent Johnathan Cerf seized approximately $102,000.00 in cash and an Apple iPhone from Samuel A. MOORE at the Milwaukee airport.

36.     On August 5, 2019, case agents secured a search warrant for MOORE's Apple iPhone. As the result of technical issues, only a partial extraction of the phone occurred. During review of the partial download, Det. Nagler observed a color photograph of a large amount of

green plant material suspected to be marijuana, a color photograph of a large quantity of a yellow substance believed to be marijuana wax, a color video and picture of an individual believed to be Samuel A. MOORE displaying a large amount of U.S. currency in a vehicle. Based upon his training and experience, Det. Nagler is familiar with the appearance of marijuana, marijuana wax, THC crumble and other marijuana products.

## 2. Confidential informant information and a controlled buy

37.    In November of 2019, a confidential informant (CI-1) reported to a detective assigned to the Washington County Drug Task Force that Samuel A. MOORE was distributing large quantities marijuana in the Milwaukee and Washington County areas.

38.    Case agents are aware that CI-1 was arrested by police for maintaining a drug trafficking house and provided the information after arrest in the hopes of receiving consideration on pending and/or potential charges. Law enforcement authorities are aware that CI-1 has no prior convictions. Case agents believe that CI-1 is truthful and reliable because information provided by CI-1 has been corroborated by other independent aspects of the investigation.

39.    Thereafter in January 2020, case agents received additional information from the Washington County Drug Task Force that a West Bend resident, Samuel A. MOORE, believed to be currently residing in Los Angeles, California, routinely posts photographs and videos on social media of marijuana, THC vape cartridges, Promethazine with Codeine, firearms, as well as large quantities of U.S. currency. MOORE posts on Snapchat and Instagram indicating the narcotics are for sale and that he can be contacted through Snapchat and/or Instagram to place an order for controlled substances.

40.    Through this investigation, case agents are aware that MOORE utilized the Instagram account "imsam - ID 1637476506," and posts frequently depicting images and videos

of illicit drugs, firearms, and large sums of U.S. currency. MOORE utilizes to the platform to advertise product that either he, or others operating under this control, have available for sale.

41. On March 1, 2021, a confidential informant (CI-2), working under the direction of law enforcement, arranged to purchase five pounds of crumble (i.e., a marijuana product containing THC concentrates) from MOORE. Case agents are aware that CI-2 was arrested by police for misdemeanor resist/obstruct offenses and bail jumping. These cases remain open, and CI-2 is working with law enforcement for consideration in these open cases. After arrest, CI-2 provided information about MOORE. Law enforcement authorities are aware that CI-2 has prior convictions for traffic and municipal ordinance offenses. Affiant believes CI-2's information is truthful because it has been corroborated by other aspects of this investigation.

42. The controlled purchase between CI-2 and MOORE was arranged using MOORE's Instagram account "imsam - ID 1637476506." Through the account "imsam - ID 1637476506," MOORE provided both a price and location for the transaction. Specifically, MOORE directed CI-2 to the area of S. 6th Street and Virginia Street, Milwaukee, Wisconsin, and instructed CI-2 where to park. Thereafter, MOORE informed CI-2 that a white pick-up truck would arrive to deliver the crumble. A short time later a white pick-up truck arrived at the location, and an unknown individual distributed the crumble. CI-2 further related that after the transaction, MOORE video chatted with CI-2 making sure CI-2 received the five pounds of crumble and was satisfied. Case agents subjected a sample of the crumble to a field test and received positive results for the presence of Tetrahydrocannibinols (THC), the active ingredient in marijuana, with a weight of 2,650 grams.

43. On March 1, 2021, shortly after the above-described controlled purchase of the THC crumble, City of Milwaukee police officers observed the same white pick-up truck, bearing

Wisconsin license plate PA5800, driven by a white male, later identified as Kyle BRICKNER (W/M, DOB XX/XX/1998) leave the controlled purchase of THC crumble at 539 W. Virginia Street, Milwaukee, Wisconsin. The officers observed the white pick- up truck drive south on South 5th Street, then west on West National Avenue, and south on South 6th Street before entering the parking lot for the Mercantile Lofts, 611 W. National Avenue, Milwaukee, Wisconsin. Based upon their training, experience and familiarity with the investigation, case agents believe that BRICKNER engaged in counter surveillance maneuvers to avoid law enforcement detection.

44. The officers observed BRICKNER exit the white pick-up truck with a small red shoulder bag and enter the building from the south entrance door. A short time later BRICKNER exited 611 W. National Avenue from the south building entrance door, carrying a tan plastic "Pick 'n Save" shopping bag, and re-entered the white pick-up truck. Officers observed BRICKNER drive back to 539 W. Virginia Street. A second white male later identified as Austyn HOCH, who was already parked at 539 W. Virginia Street, exited his vehicle and entered the front passenger side of the white pick-up truck. HOCH and BRICKNER met for a short period inside the vehicle before HOCH exited the truck and reentered his vehicle. BRICKNER, driving the white pick-up truck, returned to 611 W. National Avenue, and entered the building via the south building entrance door.

45. A short time later, after meeting with BRICKNER, law enforcement authorities arrested HOCH who was in possession of one pound of THC crumble.

**B.    Richard ROARK as the operator of SUBJECT VEHICLE 1**

46. On May 7, 2020, Det. Nagler spoke to a source of information (SOI-2) who provided information about drug trafficking between Los Angeles, California and Milwaukee,

Wisconsin.[1]  SOI-2 stated s/he knew of a group of young men who were distributing THC vape cartridges, THC edibles, slabs (THC wax) and flower (marijuana) through the social media platforms Instagram and Snapchat. SOI-2 identified Samuel MOORE and Richard ROARK as the main individuals involved in these activities. SOI-2 stated ROARK instructed MOORE in the method of both utilizing social media to advertise the product and using the U.S. postal system for distribution. SOI-2 stated that on a daily basis MOORE and ROARK each posted videos and photographs of marijuana, cash and firearms on Instagram, and shipped the drugs to customers nation-wide through the U.S. postal system. SOI-2 stated ROARK has more money than MOORE. SOI-2 also related that ROARK and MOORE had a falling out in 2019 over money.

47.     SOI-2 also informed Det. Nagler that ROARK owns a home in Butler, Wisconsin. As stated above, case agents later determined that ROARK's home address is 13625 Hampton Rd., Brookfield, Wisconsin. In part, SOI-2 explained ROARK lived with his girlfriend (now ex-girlfriend), Brianna KNIGGE, at the residence in Butler. SOI-2 provided ROARK's cell phone number, 262-352-0761, to Det. Nagler.

48.     In addition to providing information on KNIGGE, SOI-2 also stated ROARK previously dated Abigail LASKOSKI (W/F, DOB XX/XX/1997).  SOI-2 explained that when the relationship ended, LASKOSKI vandalized the windows of ROARK's Cadillac Escalade. Det. Nagler located an April 23, 2019, Brookfield Police Department report for disorderly conduct, with the address of the offense listed as 13625 Hampton Rd., Brookfield, Wisconsin.  Case Agents'

---

[1] SOI-2 is a citizen witness who has no pending charges, no criminal history and has not been remunerated for the information.  SOI-2 voluntarily provided the information to law enforcement, believing it was the right course of action.  Case agents believe SOI-2 is truthful and reliable because SOI-2's information was corroborated through independent police reports, open-source databases, and social media.

review of the Brookfield police report revealed that ROARK was listed as the victim and stated that he owned the residence at 13625 Hampton Road. ROARK further identified 262-352-0761 as his phone number. A further review of the reports revealed that Brianna KNIGGE was present during the incident, and the report described her as ROARK's current girlfriend. KNIGGE identified her address as 3005 N. Maryland Avenue. As indicated above, case agents are aware that suspicious parcels shipped by MOORE had previously been sent to that address.

49.    Additionally, the Brookfield police department report listed Abigail LASKOSKI's home address as 8890 Green Meadow Lane, Greendale, Wisconsin. Case agents are aware that during the course of this investigation, at least one (1) package deemed to be suspicious by investigators had been received at that address.

50.    On April 14, 2020, Washington County Circuit Court Judge Sandie Giernoth authorized a search warrant for Instagram content pertaining to MOORE's "imsam - ID 1637476506," account. On May 19, 2020, Det. Nagler reviewed the search warrant return data received for that account. Det. Nagler observed communication between "imsam - ID 1637476506," and an account identified as belonging to ROARK, "imrocochet – ID 176706666," approximately thirty-seven (37) times between January 2019 through March 2020. In one specific interaction between MOORE and ROARK, ROARK wrote, "Literally made you 100k in months and you shady towards me."  "Imsam" responded, "If I made 100 offu u must've made 150-200 off me." Shortly thereafter, ROARK requested to buy marijuana; however, MOORE responded that it was all gone.

51.    On January 6, 2021, Milwaukee County Multijurisdictional Drug Enforcement Group Police Officer (PO) Marlin Schilcher spoke to a confidential informant (CI-3) who was arrested for possession of a controlled substance with the intent to distribute THC and is working

in hopes of garnering consideration related to those charges. CI-3 has four (4) open felony cases and has prior traffic ticket convictions. Case agents believe CI-3 is truthful and reliable because information provided by CI-3 has been corroborated by multiple sources through open records searches as well as case agents' specific case knowledge.

52.     CI-3 stated that individuals named Samuel MOORE, Richard ROARK and Antonio M. ANGUIANO (H/M, DOB XX/XX/1997) were distributing marijuana. CI-3 stated ROARK was MOORE's "right hand man." CI-3 further explained that ROARK was supplying the "Young Paid Niggas," a Milwaukee based street gang, and MOORE was supplying another Milwaukee based street gang, the "Wild 100's." CI-3 further related that Antonio "Tony" ANGUIANO was one of MOORE's largest customers. CI-3 indicated that ANGUIANO's family owns a tow truck company where ANGUIANO stored product and proceeds of his drug dealing. CI-3 explained the tow truck company was on the boarder of Milwaukee and Menomonee falls. CI-3 also explained that ANGIANO rented an apartment in the Moderne building, located at 1141 N. Old World Third Street, Milwaukee, Wisconsin, and another apartment at 777 Apartments, located at 777 N. Van Buren Street, Milwaukee, Wisconsin. CI-3 also explained that ROARK had or has a place in Menomonee Falls.

53.     Additionally, on January 6, 2021, CI-3 stated that in the past he/she has received Instagram videos from MOORE, ROARK and ANGUIANO which depicted them with large amounts of marijuana and U.S. currency. CI-3 related that all three use Instagram to traffic drugs. CI-3 also stated that s/he has communicated will all three via Instagram utilizing the application's voiceover IP feature which allows users to place phone calls within the application. CI-3 stated ROURK sells a large quantity of marijuana and utilizes ANGUIANO to facilitate the deals.

54.     On approximately January 29 or January 30, 2021, a publicly visible Instagram post on "imsam - ID 1637476506," MOORE's Instagram profile, depicted ROARK and MOORE snowmobiling together in Minocqua, Wisconsin.

55.     On April 20, 2021, United States Magistrate Judge Stephen C. Dries authorized a search warrant for the Instagram profile "imsam - ID 1637476506." Case agents received the return from Instagram on May 11, 2021. Between November 2020 and March 2021, Det. Nagler located approximately thirteen (13) contacts between MOORE and the Instagram profile "imricochet – ID 176706666," the known Instagram profile of ROARK, some of which case agents believe are drug related (i.e., "28 to me," and "Send me 5 for 10k").

56.     Additionally, during the course of this investigation ATF Financial Investigator Michael Zeihen located credit card activity for ROARK on June 1, 2021, in the amount of $309.31 which occurred in Schoolcraft County (Michigan). Det. Nagler searched public and law enforcement databases for Schoolcraft County (Michigan) and found a record indicating ROARK purchased property at 316 Wolf St., Manistique, Michigan on September 11, 2020, for $50,000.

57.     On September 2, 2021, case agents obtained an administrative subpoena for utility records at 316 Wolf St., Manistique, Michigan. A review of the subpoena return revealed that as of September 16, 2020, the utilities at 316 Wolf St, Manistique, Michigan 49854 are in the name of Richard C. ROARK. The return also listed 262-352-0761 as ROARK's phone number. In addition to subscriber information, the return revealed a "High" rate of power consumption. Based upon their training, experience and familiarity with the investigation, case agents are aware that high electrical usage is an indicator that a building is being utilized to house a marijuana grow operation. Case agents are further aware that marijuana grow operations use an above-average level of electricity to operate the grow.

58.     On September 7, 2021, case agents obtained an administrative subpoena for toll records and subscriber information related to 262-352-0761 which revealed that Richard C. ROARK is the subscriber for this number.

59.     On December 15, 2021, the Honorable Nancy Joseph, United States Magistrate Judge, authorized search warrants for telephone numbers 262-352-0761 (ROARK) and 323-979-1250 (MOORE).  In part, the warrants authorized case agents to obtain positional data for these phone numbers.  On January 14, 2022, the warrants expired.

60.     On December 27, 2021, at approximately 8:00 p.m., case agents' review of positional data for cell phone 323-979-1250, used by Samuel MOORE, revealed that the phone left the Chicago area and headed north. The phone continued traveling north until it reached the area of 13625 Hampton Rd., Brookfield, Wisconsin, the previously identified home address of Richard ROARK.

61.     At approximately 9:20 p.m. on this same date, case agents' review of positional data for 262-352-0761, used by ROARK, was also in the area of 13625 Hampton Rd., Brookfield, Wisconsin. Both the phone used by ROARK and the phone used by MOORE were registering off the same cellular tower.

62.     On December 27, 2021, at approximately 9:30 p.m., while both phones were located in the same area, Det. Nagler observed an unknown white auto and a white 2021 Cadillac Escalade SUV (SUBJECT VEHICLE 1) in the driveway at 13625 Hampton Road.  ROARK's residence is located in a rural area and the driveway is unlit.  At the time of the instant surveillance, it was dark and Det. Nagler was only able to identify the vehicles.

63.     At approximately 9:52 p.m., Det. Nagler observed SUBJECT VEHICLE 1 leave the driveway at 13625 Hampton Rd., Brookfield, Wisconsin and head east on Hampton Road. Det.

Nagler followed SUBJECT VEHICLE 1 east bound on Hampton Road. While following SUBJECT VEHICLE 1, Det. Nagler was able to note the license plate on SUBJECT VEHICLE 1, AGG4633, which lists to Richard ROARK at 13625 Hampton Road, Brookfield, Wisconsin. SUBJECT VEHICLE 1 continued east, then went north on HWY 41/45. Det. Nagler then discontinued physical surveillance. A review of positional data for 262-352-0761, ROARK's phone, revealed that the phone left the area during the period that Det. Nagler followed SUBJECT VEHICLE 1.

64.     Det. Nagler returned to 13625 Hampton Rd., Brookfield, Wisconsin and observed the aforementioned unknown white auto remained parked in the driveway.

65.     At approximately 10:13 p.m., SUBJECT VEHICLE 1, registered to ROARK, returned to 13625 Hampton Rd., Brookfield, Wisconsin. A short time later, the unknown white auto left the driveway of 13625 Hampton Rd., Brookfield, Wisconsin. Positional data confirmed that 323-979-1250, MOORE's phone, left the area at the same time the unknown white auto left the area. After leaving the area of ROARK's house, case agents' review of positional data for 323-979-1250 revealed the phone traveled directly back to Chicago, Illinois.

66.     Later, on December 27, 2021, MOORE posted a publicly visible video to his Instagram account "100bandbrand" that depicted MOORE driving in a vehicle with a large amount of U.S. currency visible on his lap. Based upon case agents training and experience, and familiarity with the investigation case agents believe MOORE met with ROARK to collect drug proceeds, which he then displayed on social media to increase his reputation and elevate his status.

67.     On January 13, 2022, HIDTA analyst Martin Wilson conducted a telephone toll analysis of 262-352-0761. In part, the analysis revealed that between December 4, 2021, and

January 4, 2022, approximately forty-two (42) contacts occurred between 262-352-0761 and 323-979-1250, the number associated with Samuel MOORE.

68. On January 15, 2022, the Waukesha County Drug Stoppers received an anonymous drug tip stating that Richard ROARK was utilizing a warehouse location, located in very close proximity to his home, to store and sell large quantities of marijuana. At the time of this complaint, investigators were unaware of this warehouse location.

69. On January 24, 2022, the Honorable Stephen Dries, United States Magistrate Judge, authorized search warrants for telephone numbers 262-352-0761 (ROARK) and 323-979-1250 (MOORE). In part, the warrants authorized case agents to obtain positional data for these phone numbers. On February 23, 2022, the warrants expired.

70. On February 9, 2022, Det. Nagler, was able to locate ROARK's SUBJECT VEHICLE 1, utilizing positional data collected for 262-352-0761, the number associated with ROARK. Det. Nagler observed the vehicle at ROARK's known residence. A short time later, Det. Nagler followed SUBJECT VEHICLE 1 as it drove eastbound on Hampton Road, then northbound on north 126th Street. At this point, Det. Nagler lost sight of the vehicle and conducted a search of the adjacent blocks, where he observed SUBJECT VEHICLE 1 parked in front of an unmarked tan one story brick warehouse, with large white overhead garage door, located at 5206 N. 126th Street, Butler, Wisconsin.

71. Det. Nagler observed that the warehouse has dark window tinting taped to the inside of all windows, seemingly to prevent people outside from seeing into the building. Det. Nagler observed that at the time he observed the vehicle parked in front of the warehouse, the location data for 262-352-0761 had moved from the area of ROARK's residence and registered on the tower that covered the area of this warehouse. Additionally, Det. Nagler had previously identified

this general area because the positional data for ROARK's phone frequently pinged on the tower located in this area; however, Det. Nagler had not previously identified the warehouse location. Finally, case agents are aware that this warehouse is located approximately three minutes, by vehicle, from ROARK's residence.

72.     Through MOORE's social media posts, case agents were aware that MOORE was in Columbia from January 6, 2022, to February 14, 2022.  Because MOORE was out of the country, location data and toll activity for MOORE's line was not reported to investigators during this time. Further toll analysis for 262-352-0761 revealed that MOORE contacted ROARK immediately upon his return to the United States on February 14, 2022.

73.     On February 16, 2022, Det. Nagler was monitoring location data for 323-979-1250, the number associated with MOORE.  At this time, Det. Nagler observed the phone move from the Chicagoland area northbound toward Wisconsin.  Established surveillance in the area of ROARK's house, located at 13625 Hampton Rd., Brookfield, Wisconsin, in anticipation of a possible meeting between MOORE and ROARK.  At approximately 1:39 p.m., using the positional data for ROARK's phone, I located ROARK at the previously identified warehouse, located at 5206 N. 126th Street, Butler, Wisconsin.  SUBJECT VEHICLE 1 was observed parked in the driveway of the warehouse.  At approximately 1:48 p.m., a silver pick-up truck, parked in front of the warehouse and a white male walked into the front door of the building.  At 1:54 p.m., ROARK and the unknown white male exited the warehouse, and ROARK locked the front door with his keys.  The unknown male walked back to his truck and left the area.

74.     At 1:55 p.m. I observed a white Volkswagen (VW) Sedan (unknown model; unknown plate) pull up next to SUBJECT VEHICLE 1 in the driveway of the warehouse.  When the driver of the white VW white sedan momentarily stepped outside of the vehicle to talk to

ROARK, I observed that MOORE was driving the white VW sedan. A short time later, MOORE and ROARK both drove away, MOORE in the VW sedan and ROARK in SUBJECT VEHICLE 1. I am familiar with the appearance of both MOORE and ROARK. Furthermore, to date other than marijuana trafficking, case agents have been unable to identify any legitimate business or occupation for either MOORE or ROARK.

75.     At approximately 2:00 p.m., I observed MOORE, driving the white VW sedan, back into the driveway at ROARK's residence, located at 13625 Hampton Rd., Brookfield, Wisconsin. I observed MOORE park in the garage at 13625 Hampton Road. Approximately 30 seconds later, I observed ROARK, driving SUBJECT VEHICLE 1, pull into the driveway and park. I then observed MOORE and ROARK enter the residence.

76.     On February 17, 2022, HIDTA analyst Martin Wilson conducted a telephone toll analysis of 262-352-0761. In part, the analysis revealed that between January 21, 2022, and February 17, 2022, approximately four (4) contacts occurred between 262-352-0761 and 323-979-1250, the number associated with Samuel MOORE.

77.     On February 19, 2022, I conducted electronic surveillance of the previously identified warehouse associated with ROARK, located at 5206 N. 126th Street, Butler, Wisconsin. At approximately 1:43 p.m., I observed ROARK walk to the front door and unlock it with keys. A short time later an unknown white male, wearing a light-colored hooded sweatshirt pulled up over his head (bearing the same height and weight as MOORE) exited SUBJECT VEHICLE 1 and walk inside the warehouse. Approximately one minute later, an unknown white male, driving a navy blue pick-up truck, parked in front of the warehouse on the street, and walked into the warehouse through the front door.

78.     At approximately 1:47 p.m., I observed the unknown white male exit the warehouse through the front door carrying a white bag.  The unknown white male entered his navy blue pick-up truck and left the area.  A short time later, I observed both ROARK and the white male believed to be MOORE exit the warehouse.  ROARK locked the door to the warehouse with a key, and both individuals reentered SUBJECT VEHICLE 1 and left the area, with ROARK driving.  Based upon my training and experience, I believe that this meeting was consistent in length of time with a narcotics transaction.  Analysis of locational data collected for 262-352-0761, the number associated with ROARK, and 323-979-1250, the number associated with MOORE, revealed that both phones were registering on cell towers that covered the warehouse's location at the time of this meeting.

79.     On February 23, 2022, the Honorable Stephen Dries, United States Magistrate Judge, authorized search warrants for telephone numbers 262-352-0761 (ROARK) and 323-979-1250 (MOORE).  In part, the warrants authorized case agents to obtain positional data for these phone numbers.  On March 25, 2022, the warrants expired.

80.     On March 3, 2022, a review of the location data for 323-979-1250, used by MOORE, indicated that the phone traveled northbound out of Chicago.  Case agents established surveillance in the area of 13625 Hampton Road, Brookfield, Wisconsin, ROARK's address. At approximately 3:15 p.m., a case agent observed MOORE, driving the aforementioned white four door Volkswagen Sedan driving westbound on Hampton toward ROARK's residence.  A case agent watched as the vehicle parked in the driveway at 13625 Hampton Road.  A short time later, a case agent observed MOORE exit the vehicle carrying a plastic bag and enter the residence through the rear entrance.  It should be noted, location data collected for 323-979-1250 confirmed the phone was registering on a cellular tower that covered 13625 Hampton Road at the time

MOORE was observed by investigators. Based upon their training, experience and familiarity with the investigation, case agents therefore believe that the phone was in MOORE's possession.

81.     At approximately 4:09 p.m., case agents observed ROARK arrive at the warehouse, previously identified as 5206 N. 126th St., Butler, Wisconsin, in SUBJECT VEHICLE 1. At the same time, a case agent observed a maroon van arrive and park at the warehouse. A case agent observed ROARK park in front of the overhead door to 5206 N. 126th St., and he observed the maroon van park on the street. A case agent then observed an unknown white male exit the van and enter warehouse with ROARK. A few minutes later, a case agent observed the unknown male leave the warehouse with a box. ROARK then exited the warehouse and drove away in SUBJECT VEHICLE 1. A Review of the location data corresponding to ROARK's cell phone, 262-352-0761, revealed that the phone was registering on a tower that covers 5206 N. 126th St., Butler, Wisconsin at the same time the case agent observed this interaction.

82.     On March 21, 2022, Analyst Martin Wilson conducted toll analysis for 262-352-0761 for data collected between February 18, 2022, and March 21, 2022. A review of this data revealed that ROARK had ten (10) contacts with MOORE at 323-979-1250. The most recent contact was on March 21, 2022. Analysis of the toll records collected during this time also shows eight (8) common contacts between ROARK and MOORE.

83.     On April 29, 2022, the Honorable Stephen Dries, United States Magistrate Judge, authorized search warrants for telephone numbers 262-352-0761 (ROARK) and 323-979-1250 (MOORE). In part, the warrants authorized case agents to obtain positional data for these phone numbers. On May 29, 2022, the warrants expired.

84.     On May 3, 2022, MOORE, posted the following publicly visible photograph on the previously identified Instagram profile 100Bandbrand:



85.　　The photo displayed above depicts a screenshot of a Zillow.com Real Estate listing, with identifying information removed. MOORE indicates in the caption that the property is located in the upper peninsula of Michigan. In this screenshot, MOORE asserts that the property had previously served as a carpet store and that the location is a great site for a marijuana grow operation.

86.     On that same date, MOORE also posted the following publicly visible photograph to the Instagram profile 100BandBrand:



87.     The photo displayed above depicts the actual building which MOORE is advertising for sale.  In the caption of the photograph, MOORE states the building "still looks like a running business," which your affiant believes is intended as a means of concealing the grow operation from law enforcement detection. Prior to this posting by MOORE, ATF Financial

Investigator (ATF FI) Michael Zeihen analyzed financial records for ROARK, obtained through grand jury subpoena. While reviewing this financial evidence obtained, ATF FI Zeihen found a credit card transaction totaling $309.31 which occurred in Schoolcraft County, Michigan on June 1, 2021. In response to learning of this Michigan transaction, Det. Nagler searched public and law enforcement databases for Schoolcraft County, Michigan. Det. Nagler identified a property located at 316 Wolf St., Manistique, Michigan, which records indicate is owned by Richard ROARK. These records further state ROARK resides at 13625 CTH-K, Brookfield, Wisconsin 53005. The property sale date was September 11, 2020.

88.     The following photograph is from Google maps for 316 Wolf Street:



89.     The building depicted in this photograph, of which ROARK is the registered owner, appears to be the same building MOORE is offering for sale on social media, which he describes as a good site to house a marijuana grow operation.

90.     On May 23, 2022, at approximately 3:26 p.m., Washington County Investigator John Otte observed through electronic surveillance that 262-352-0761, the number associated with ROARK, was traveling south towards Chicago.

91.     Additionally, on the same date at approximately 4:38 p.m. through 5:55 p.m. Det. Nagler observed that the positional data for 262-352-0761, the number associated with ROARK, was registering on cellular towers in the area of the "near north side" and "gold coast" in Chicago, Illinois. Det. Nagler continued to monitor the positional data for 262-352-0761 as set forth below. Based upon case agents training, experience, and familiarity with the investigation, case agents are aware that the drug trafficking organization uses a location in this vicinity to distribute wholesale amounts of marijuana.

92.     At approximately 6:08 p.m., 262-352-0761, the number associated with ROARK, began moving northbound towards Wisconsin.

93.     At approximately 7:00 p.m., Det. Nagler established physical surveillance at 13625 Hampton Rd., Brookfield, Wisconsin, ROARK's residence.

94.     At approximately 7:39 p.m., 262-352-0761, the number associated with ROARK, was registering on a cellular tower in the area of S. 27th. St. and W. Rodgers St. Milwaukee, Wisconsin. As a result of this information, Det. Nagler began "spot checking" known drug trafficking organization addresses in the area of Butler and Menominee Falls, Wisconsin.

95.     At approximately 7:54 p.m., 262-352-0761, the number associated with ROARK, was registering on a cellular tower in the area of Water Street and Barclay Street in Milwaukee Wisconsin.

96.     At approximately 8:20 p.m., Det. Nagler observed ROARK's aforementioned white 2021 Cadillac Escalade, SUBJECT VEHICLE 1, turn southbound on S. River Drive, in Menominee Falls, Wisconsin.

97.     Based upon their training, experience, and familiarity with the investigation, case agents are aware that from early on in the investigation approximately ten suspicious packages

were received by James NEU at his listed address at the time. Furthermore, over the course of the investigation NEU transferred cash to other DTO members. Additionally, on May 24, 2022, while conducting random surveillance at NEU's residence, W130 N6289 River Dr., Menomonee Falls, Wisconsin, case agents observed two drug transactions. On this date, two individuals, at separate times, entered the residence and left shortly thereafter with a red grocery store type bag, and a large object concealed in a sweatshirt, respectively. Based upon the above, and their training experience and familiarity with the investigation, case agents believe that NEU distributes drugs on behalf of the DTO.

98.      At approximately 8:39 p.m., 262-352-0761, the number associated with ROARK, registered on a cellular tower whose coverage area includes W130 N6289 River Dr., Menomonee Falls, NEU's residence.

99.      At approximately 8:51 p.m., case agents established surveillance at NEU's residence. Det. Nagler observed ROARK's vehicle, pull into the garage, with only the rear of the Escalade visible. Shortly thereafter, based upon the height and weight, a person believed to be ROARK placed a large box in the rear of the white Escalade, SUBJECT VEHICLE 1, entered the driver's side and vehicle immediately pulled out of the W130 N6289 River Drive driveway.

100.      A review of location data for 262-352-0761, the number associated with ROARK, revealed that the phone traveled to western Brookfield, then eventually returned to the area of ROARK's home, 13625 Hampton Rd., Brookfield, Wisconsin.

101.      Based upon your affiants training and experience, it is believed ROARK's quick trip to Chicago and frequent stops immediately after he returned to the Milwaukee area were indicative of distribution of product and/or collection of proceeds to co-conspirators in and around

the Milwaukee area. It is also clear based on physical surveillance and electronic location data, that ROARK used SUBJECT VEHICLE 1 for his drug activity.

102.    Case agents' analysis of the positional data collected for 262-352-0761, the phone used by ROARK, has assisted case agents to confirm through ROARK's movements that ROARK, but sometimes agents are provided very large geographical areas within where the phone could be located. In these scenarios, it becomes quite difficult for agents to locate the vehicle to conduct physical surveillance to further the investigation. Your affiant is aware that the precise locational data obtained through the utilization of a GPS device would prove invaluable in continuing to identify additional members and addresses of the MOORE DTO.

103.    On June 13, 2022, the Honorable William E. Duffin, United States Magistrate Judge in the Eastern District of Wisconsin, signed a search warrant allowing agents to affix a GPS tracking device on SUBJECT VEHICLE 1 for a period of forty-five (45) days.

104.    On June 15, 2022, Brown County Sheriff's Department Detective John Otte located the vehicle in a public parking lot and affixed the GPS tracking device to SUBJECT VEHICLE 1.

### C.    ROARK now uses SUBJECT VEHICLE 2

105.    Between July 2 and July 5, 2022, investigators observed that SUBJECT VEHICLE 1 did not move from the area of 1425 Bedford Court, which agents determined was adjacent to the property of Mander Collision and Glass, located at 1604 Manhattan Drive, Waukesha, Wisconsin. On July 5, 2022, Det. Otte observed SUBJECT VEHICLE 1 parked in the parking lot of Mander Collision and Glass. Det. Otte observed there was no apparent physical damage to the vehicle and the license plate had been removed from the vehicle. Det. Otte also observed the front license plate holder, which was a Milwaukee Bucks vanity license plate holder, had also been removed.

Det. Otte retrieved the tracking device from the vehicle at that time, believing ROARK was no longer the owner of the vehicle.

106.    On July 6, 2022, at approximately 12:30 p.m., Det. Nagler established physical surveillance in the area of 13625 Hampton Rd., Brookfield, Wisconsin, the known residence of ROARK, where the location data collected for (262) 352-0761, the number associated with ROARK, indicated the phone was registering on a cellular tower which covers the residence.

107.    Det. Nagler observed one vehicle parked in ROARK's driveway; more particularly described as a Tan 2022 Dodge Ram 1500 TRX pick-up truck (bearing Wisconsin license plate no. TH9661, VIN 1C6SRFU96NN370736) ("**SUBJECT VEHICLE 2**").

108.    A search of the Wisconsin Department of Motor Vehicles records indicates the vehicle lists to Richard Cane ROARK (W/M, DOB: XX/XX/1996, DL: R6207439645603) at 4990 Arthur Rd., Slinger, Wisconsin 53086-9529.  It should be noted, investigators have previously identified this address as belonging to ROARK's father.

109.    On that same date, at approximately 3:05 pm, location data for the phone number (262) 352-0761, the number associated with ROARK, was pinging on a cellular tower in the area of Mayfair mall, 2500 Mayfair Rd. Det. Nagler responded and observed **SUBJECT VEHICLE 2**, parked, unoccupied, in the parking lot at Mayfair mall.

110.    At approximately 5:14 p.m., location data for phone number (262) 352-0761, the number associated with ROARK, was registering on a cellular tower covering 5206 N. 126th St., Butler Wisconsin, the location of a previously identified warehouse belonging to ROARK. Det. Nagler observed **SUSPECT VEHICLE 2** pull in the driveway of the warehouse, the sole occupant and driver, ROARK, exited the driver's side door.  Det. Nagler observed ROARK meet

with two individuals and they examined the new truck in the driveway. At approximately 6:26 p.m., Det. Nagler observed **SUSPECT VEHICLE 2** drive out of the driveway.

111.    On July 7, 2022, at approximately 9:09 a.m., location data for the phone number (262) 352-0761, the number associated with ROARK, was registering on a cellular tower which covers 5206 N. 126th St. Butler Wisconsin. At that same time, Det. Nagler observed **SUSPECT VEHICLE 2** back into the open overhead door at 5206 N. 126th St. Butler Wisconsin.  To date, based upon telephone location data for the telephone number associated with ROARK, GPS data for SUBJECT VEHICLE 1 and physical surveillance, case agents believe that ROARK continues to engage in criminal activity and that ROARK will use **SUBJECT VEHICLE 2** in the same manner as SUBJECT VEHICLE 1 as described above.

112.    Based on information obtained through physical surveillance, confidential sources and information from other law enforcement agents, I believe that ROARK is using and will use **SUBJECT VEHICLE 2** to further his drug trafficking activities.  Based upon my own observations, I know that **SUBJECT VEHICLE 2** is presently within the Eastern District of Wisconsin.

113.    To effectively track the movement of **SUBJECT VEHICLE 2** and to decrease the chance of detection, I seek to track **SUBJECT VEHICLE 2** while they are in the Eastern District of Wisconsin and elsewhere.  To ensure the safety of the executing officer(s) and to avoid premature disclosure of the investigation, it is requested that the court authorize installation, removal, and maintenance of the tracking device during both daytime and nighttime hours.  This authorization is essential due to the vehicle being parked in close proximity to various residences, including 13625 Hampton Road, Brookfield, Wisconsin, ROARK's residence. Due to the proximity of the vehicle's parking locations to the residences, installation

and removal of the tracking devices would be extremely difficult to accomplish during daytime hours without being detected.

## AUTHORIZATION REQUEST

114.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 authorizing periodic monitoring of the tracking device during both daytime and nighttime hours for a period of 45 days. The tracking device may produce signals from inside private garages or other such locations not open to the public or visual surveillance.

115.     It is further requested that in the event that **SUBJECT VEHICLE 2** travels outside the territorial jurisdiction of the court, the order authorizes the continued monitoring of the electronic tracking devices in any jurisdiction within the United States, pursuant to 18 U.S.C. § 3117.

116.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 90 days after the collection authorized by the warrant has been completed.  This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the owner or user of **SUBJECT VEHICLE 2** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  *See* 18 U.S.C. § 3103a(b)(1).  There is reasonable necessity for the use of the technique described above, for the reasons set forth above.  *See* 18 U.S.C. § 3103a(b)(2).